IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-02067-WYD

JASON HILLS,

      Applicant,

v.

FRED FIGUEROA, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondent.

---

## ORDER OF DISMISSAL

---

      Applicant Jason Hills is in the custody of the Colorado Department of Corrections and currently is incarcerated at the Kit Carson Correctional Facility in Burlington, Colorado.  Mr. Hills has filed a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging the validity of his conviction in the Jefferson County District Court of the State of Colorado in Criminal Case No. 02CR1263.  In an order filed on April 7, 2008, I directed Respondents to file an Answer to the Application, which they did on April 28, 2008.  Mr. Hills did not reply to the Answer.  After reviewing the entire file, I find that an evidentiary hearing is not necessary.  For the reasons stated below, the Application will be denied.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

      In April 2003, Mr. Hills was convicted by a trial jury of attempted first degree murder, first degree burglary, two counts of second degree assault, false imprisonment, failure to leave the premises, resisting arrest, criminal mischief, menacing, and three

counts of a crime of violence and was sentenced on May 23, 2003, to a total of fifty-three years of incarceration.  (Answer at 3.)  Mr. Hills' conviction was based on the events that took place on May 17, 2002, that included (1) his going to his estranged wife's home with a loaded shotgun; (2) holding her hostage for two hours; (3) threatening to kill her; (4) hitting her with the butt of the gun and physically abusing her with the gun; (4) pushing her down the stairs; and (5) refusing to leave the home after she had escaped from the home.  Mr. Hills was removed by force from the home after negotiations to execute his removal failed between Mr. Hills and SWAT officers.

Mr. Hills filed an appeal to the Colorado Court of Appeals that was denied.  On September 11, 2006, the Colorado Supreme Court denied his petition for a writ of certiorari.  (Answer at Ex. F.)  Ninety days after the Colorado Supreme Court denied Mr. Hills' petition for certiorari review, on December 10, 2006, Mr. Hills' conviction and sentence was final.  *See Locke v. Saffle*, 237 F.3d 1269, 1272 (10th Cir. 2001).  Mr. Hills filed his § 2254 in this Court on September 27, 2007.  I find, and Respondents concede, that the instant action is timely.

Mr. Hills sets forth four claims in this action, including (1) reversible error by the trial court in admitting overwhelming prejudicial evidence of alleged bad acts; (2) abuse of discretion by the trial court in refusing to grant a motion for mistrial after a juror saw him in handcuffs with a deputy standing behind him; (3) insufficient evidence to sustain the jury's verdict that he was guilty of attempted first degree murder; and (4) trial court error in imposing consecutive sentences for the two second degree assault counts and the attempted first degree murder count.  (Oct. 3 and Dec. 3, 2007, Applications)

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Hills seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.  Pursuant to *House,*

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 [   ] (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08 [   ].  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent

4

will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, and Mr. Hills bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.* (citation omitted).

## III. MERITS OF THE CLAIMS

### A. Prior Bad Acts/Prejudicial Evidence

Mr. Hills asserts that the trial court erred in allowing statements by the victim because at least two of the incidents referred to by the victim were not reported to the police. (Oct. 3, 2007, Application at 9.) Mr. Hills contends that the allowed evidence

was severely prejudicial to him and denied his right to due process.  (Oct. 3, 2007, Application at 9.)

Respondents argue that "in a federal habeas corpus action, the inquiry is not whether the state court has properly applied its own rules of evidence, but whether errors of constitutional magnitude have been committed."  (Answer at 17.) Respondents further contend that a state court's decision regarding evidence is upheld unless the state evidentiary rule itself denies the defendant's due process.  (Answer at 17.)  Respondents conclude that (1) the Colorado statutes authorize the admission of other acts of domestic violence; (2) the Colorado court's analysis concerning the admissibility of this evidence was reasonable; and (3) Mr. Hills fails to show a violation of his due process rights.  (Answer at 17.)

With respect to the prior bad acts claim, the Colorado Court of Appeals found as follows:

> In cases involving domestic violence, the admissibility of evidence of prior acts of domestic violence is governed by § 18-6-801.5, C.R.S. 2005, and CRE 404(b).  *People v. Moore*, 117 P.3d 1 (Colo. App. 2004).
>
> Section 18-6-801.5(1), C.R.S. 2005, provides that "domestic violence is frequently cyclical in nature, involves patterns of abuse, and can consist of harm with escalating levels of seriousness."  Therefore, the General Assembly "declares that evidence of similar transactions can be helpful and is necessary in some situations in prosecuting crimes involving domestic violence."
>
> Pursuant to 18-6-801.5(2) & (3), C.R.S. 2005, evidence of other acts of domestic violence between the defendant and the victim or other persons may be offered so show a common plan, scheme, design, identity, modus operandi,
>
> motive, guilty knowledge, or of some other purpose.  *People v. Ramirez*, 18 P.3d 822 (Colo. App. 2000).

Likewise, evidence of other acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, but may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  CRE 404(b); *People v. Rath*, 44 P.3d 1033 (Colo. 2002).

Evidence of other acts is admissible if it (1) relates to a material fact; (2) is logically relevant; (3) has logical relevance that is independent of the intermediate inference that the defendant has a bad character and acted in conformity therewith; and (4) has probative value that is not substantially outweighed by the danger of unfair prejudice. *People v. Rath*, *supra*; *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).

A trial court has substantial discretion in determining the admissibility of other acts evidence, and its determination will not be disturbed on appeal absent an abuse of that discretion.  To constitute an abuse of discretion, the trial court's determination must be manifestly arbitrary, unreasonable, or unfair.  *Masters v. People*, 58 P.3d 979 (Colo. 2002).

In reviewing the trial court's decision for an abuse of discretion, we afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *People v. Rath, supra*.

Here, the People's offer of proof included there incidents of prior domestic violence against the victim and two incidents against a former wife.  Three incidents involved defendant striking the victims in the head and choking them. One involved defendant breaking down a door and threatening his former wife with a handgun.  Another incident involved defendant breaking into the victim's home, threatening her, and injuring her.  The People argued that these prior acts of domestic violence were relevant to establish defendant's motive and intent when he broke into the victim's home armed with a shotgun.

Under the second prong of the *Spoto* test, defendant argues that two of the incidents were not relevant because he introduced contradictory testimony.  However, contradictory evidence goes to the weight of the evidence,

not its admissibility. *See People v. Trefethen*, 751 P.2d 657 (Colo. App. 1987).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence. CRE 401. Both of the incidents that defendant challenges on appeal involved defendant strangling the victim and slamming parts of her body against a truck. One also involved defendant holding the victim against her will for an extended period to time. Therefore, the trial court found, and we agree, that these incidents were "relevant and material to proof of [defendant's] motive, rebutting his contrary story, and rebutting his implied charge that the victim fabricated her story."

Defendant also challenges the admissibility of the evidence under the third prong of the *Spoto* test, namely that the evidence has logical relevance independent of the inference that defendant has a bad character and that he acted in conformity therewith.

However, the third prong of the *Spoto* test does not require that an inference of a defendant's bad character be completely absent, but merely that the proffered evidence be logically relevant independent of that inference. *People v. Snyder*, 874 P.2d 1076 (Colo. 1994). Here, defendant testified that his motive and intent was to offer the victim financial assistance. Therefore, this evidence was relevant to the contested issue of defendant's motive, independent of an inference of his bad character.

Likewise, defendant challenges the admissibility of the evidence as being unfairly prejudicial under the fourth prong of the *Spoto* test. However, unfair prejudice refers only to an undue tendency on the part of admissible evidence to suggest a decision made on an improper basis and does not mean prejudice that results from the legitimate probative force of the evidence. *People v. Rath*, *supra*.

Assuming the maximum probative value and the minimum unfair prejudice of the evidence, we agree with the trial court that the probative value of these incidents is "great" and outweighs the danger of any unfair prejudice. *See People v. Rath*, *supra*. Again, defendant testified that

> his motive in going to the victim's house was to give her
> financial assistance.  Therefore, we perceive no abuse of
> discretion in allowing the People to present evidence of the
> prior incidents because they have substantial probative value
> regarding the contested issue of defendant's motive.  *See
> Masters v. People*, *supra*
>
> Accordingly, we conclude the trial court did not abuse its
> discretion in admitting evidence of defendant's prior acts of
> domestic violence.

*State of Colo. v. Hills*, No. 03CA1312 at 2-7 (Colo. App. Apr. 13, 2006).

Generally, state law questions about the admissibility of evidence are not reviewed in federal habeas proceedings.  *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001).  A federal court "may not interfere with state evidentiary rulings unless the rulings in question rendered 'the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.' "  *Id.* (quoting *Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir.1989)).  A state court's admission of evidence of prior crimes, wrongs or acts will only be disturbed if the "probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [applicant] due process of law."  *Hopkinson v. Shillinger,* 866 F.2d 1185, 1197 (10th Cir. 1989), *overruled on other grounds by Sawyer v. Smith,* 497 U.S. 227 (1990).

Based on the following, I find that the state court's decision to allow the evidence of Mr. Hills' prior abusive acts does not infringe upon his constitutional rights, and no fundamental unfairness occurred in the admission of the challenged evidence.  The Colorado Court of Appeals found that evidence of other acts is admissible if (1) it relates to a material fact; (2) it is logically relevant; (3) it has logical relevance independent of a defendant being found to have a bad character; and (4) it has probative value that is not substantially outweighed by the danger of unfair prejudice.  The court of appeals further

found that in Mr. Hills' case the state offered three incidents that involved Mr. Hills striking previous victims in the head and choking them.  The court of appeals also found that one prior incident involved Mr. Hills breaking down a door and threatened a victim with a handgun, while another incident involved Mr. Hills breaking into a victim's home and threatening and injuring the victim.

The court of appeals further found that both of the prior incidents Mr. Hills challenged on appeal involved him strangling the victim and slamming the victim against a truck, and one of the incidents involved Mr. Hills holding the victim against her will for an extended period of time.  The court of appeals found that the prior acts not only were relevant and material to proof of Mr. Hills' motive, the incidents rebutted both Mr. Hills' contrary story and his implied charge that the victim fabricated her story.  I find that the probative value of the prior incidents outweighed any prejudice, and Mr. Hills' due process rights were not violated.  The court of appeals' decision regarding the admissibility of evidence of prior acts, therefore, was not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  The prior acts claim, therefore, lacks merit and is denied.

### B.  Juror/Mistrial

Mr. Hills asserts that on the first day of trial a jury member saw him in handcuffs with a deputy standing behind him and "jumped back" when he/she saw him.  (Dec. 3, 2007, Application at 6.)  Mr. Hills contends that seeing him in handcuffs with a deputy shows that he was in custody, infers his guilt, and causes prejudice to the entire trial. (Dec. 3, 2007, Application at 6.)  Mr. Hills also asserts that whether or not the juror saw

the actual handcuffs is irrelevant in that he had his hands behind him, and the deputy was directly behind him.  (Oct. 3, 2007, Application at 17.)

Mr. Hills further contends that in denying the mistrial motion the trial court erred in not either dismissing or questioning the juror as to whether or not he saw Mr. Hill, rather than simply stating there was no way that a juror could have seen him.  (Oct. 3, 2007, Application at 17.)  Mr. Hills also contends that the juror most likely discussed this viewing with other jurors, and as a result he was not represented to the jury as innocent or given a fair trial.  (Oct. 3, 2007, Application at 17.)

Respondents assert that the incident in question took place when the bailiff opened the door to announce the jury, before the court was ready for the jury to enter the courtroom.  (Answer at 18.)  Respondents contend that at the time the door was opened by the bailiff the deputy was in the process of releasing Mr. Hills from the handcuffs, and the trial court judge immediately ordered the bailiff to close the door. (Answer at 18.)  Respondents further contend that the judge was present during the incident, determined that Mr. Hills had been shielded from the jury's view, even though defense counsel claimed one juror saw Mr. Hills and jumped back, and found that jurors most likely were aware that Mr. Hills was in custody, because a deputy was always with Mr. Hills.  (Answer at 18.)

Relying on findings in several federal circuit courts, including the Fifth, Sixth, Ninth, and Eleventh Circuits, Respondents conclude that a brief and inadvertent view of a defendant in handcuffs, or jail clothing, does not rise to the level of a constitutional error or justify a finding that the view of Mr. Hills was so prejudicial a mistrial was required.  (Answer at 21.)

11

With respect to the juror claim, the Colorado Court of Appeals found as follows:

> A mistrial is a drastic remedy and is warranted only when prejudice to the defendant is so substantial that its effect on the jury cannot be remedied by other means.  Absent an abuse of discretion, we will not disturb a trial court's decision to grant or deny a motion for mistrial.  *People v. Perea*, 126 P.3d 241 (Colo. App. 2005).

> Here, before the trial court was ready for the jury to enter the courtroom, the bailiff opened the door to announce the arrival of the jury.  At that time a police officer was standing next to defendant and was releasing him from his handcuffs.  The trial court immediately signaled the bailiff to close the door, and no juror was permitted to enter the courtroom.

> In denying the defendant's motion, the court indicated that it doubted that a juror saw anything, but if so, the juror would not have seen the handcuffs because they were not visible from the jury room door.

> As in *People v. Harlan*, 8 P.3d 448 (Colo. 2000), it is undisputed here that the juror's possible exposure to defendant in handcuffs was inadvertent; thus, it was not necessary to grant a mistrial.  *See also People v. Dillon*, 655 P.2d 841 (Colo. 1982) (mere exposure to a handcuffed defendant is not necessarily sufficient to warrant the granting of a mistrial); *Mclean v. People*, 172 Colo. 338, 473 P.2d 715 (1970) (the appearance of the defendant before the jury in handcuffs is reversible error only when the exposure was unnecessary and prejudicial to the defendant).

> Moreover, when the trial court offered to give a jury instruction concerning the issue of observing defendant in handcuffs, defendant declined the instruction.

> Accordingly, we conclude the trial court did not abuse its discretion by refusing to grant a mistrial.

*Hills*, No. 03CA1312 at 7-9.

"In itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial."  *See United States v. Jones,* 468 F.3d 704, 709 (10th Cir. 2006).  Such a viewing must result in prejudice to violate a defendant's due

process rights, and the burden is on the defendant to show the prejudice. *United States*

*v. Ware*, 897 F.2d 1538, 1542 (10th Cir. 1990), abrogated on other grounds by *United*

*States v. Jones*, 235 F.3d 1231 (10th Cir. 2000). The trial court judge, who observed

from the bench what happened, stated as follows:

> What did happen, as I observed it from the bench, is that before the deputy had finished returning to — Mr. Hills to his seat and while he was still standing next to Mr. Hills with Mr. Hills behind him and, incidentally, hidden from the jury, the bailiff opened the door to bring the jury back in and said, please rise for the jury. No juror was permitted to enter.

> I immediately signaled to the bailiff we were not ready. She immediately closed the door. I, thankfully, doubt the jurors saw anything. If they did, they — she didn't see handcuffs. They weren't visible. Even if one of the jurors saw the deputy standing next to Mr. Hills, this certainly would not come as a surprise, because everybody knows, when one juror during voir dire had to say something privately to the Court and counsel, defense counsel asked to bring Mr. Hills with us, the deputy accompanied us all right in front of they jury and out of the courtroom and back to chambers.

> These people are not stupid folks. They know this is a big deal. If they think Mr. Hills is out, I'd be surprised. I would be absolutely stunned if they didn't realize he's being watched by the deputies. That is not going to affect their deliberations. But I reject the fact that, in fact, they saw anything, and there's absolutely no grounds for a mistrial, and it's denied.

(Answer Ex. A at 25. (citing to Vol. # 6 at 132-33 of the state court record).)

The single juror's viewing of Mr. Hills was accidental. Mr. Hills fails to show an

inherent or actual prejudice from the accidental viewing. I, therefore, find that the

Colorado Court of Appeals' decision regarding the accidental viewing was not contrary

to or an unreasonable application of clearly established federal law as determined by

the U.S. Supreme Court. The juror claim, therefore, lacks merit and is denied.

13

C.  Insufficient Evidence/First Degree Murder

Mr. Hills asserts that the evidence does not support a conviction of attempted first degree murder because, even though the shotgun he used was in working order, he did attempt to shoot his estranged wife.  (Oct. 3, 2007, Application at 17.)  Mr. Hills further asserts that he did not have the time to deliberate any attempt to murder his estranged wife.  (Oct. 3, 2007, Application at 18.)  Mr. Hills also asserts that one of the SWAT team members committed perjury during his testimony at trial, when he testified that Mr. Hills stated he was going to kill the victim, because another SWAT team member had stated previously at the preliminary hearing that Mr. Hills said nothing about his intent to kill the victim.  (Oct. 3, 2007, Application at 19.)  Mr. Hills contends that the SWAT team member's perjured testimony at trial was prejudicial and tainted the entire trial.  (Oct. 3, 2007, Application at 19.)  Mr. Hills further asserts that according to telephone records the victim called him on the day of the assault and asked him to come to her house.  (Oct. 3, 2007, Application at 19.)

Mr. Hills also argues that there is no proof that he intended to actually kill anyone, and the evidence actually shows that he did not commit any life-threatening acts against the victim but only threatened to physically abuse her but not to shoot her.  (Oct. 3, 1007, Application at 21.)  Mr. Hills concludes that because no one was injured or died the charges against him are unconstitutional in light of the fact that the state statutes do not support the charges against him.  (Oct. 3, 2007, Application at 21.)

Respondents argue that the Colorado Court of Appeals correctly rejected Mr. Hills' contention that it was not necessary to actually pull the trigger of the gun in order to demonstrate "deliberation" in the context of attempted first-degree murder.  (Answer

14

at 22.)

With respect to Mr. Hills' insufficient evidence claim, the Colorado Court of

Appeals found as follows:

> When the sufficiency of the evidence is challenged on appeal, we must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt.  The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence.  *People v. Sprouse*, 983 P.2d 771 (Colo. 1999); *People v. Carrasco*, 85 P.3d 580 (Colo. App. 2003).

> A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constitution a substantial step toward the commission of the offense.  A substantial step is any conduct, whether act, omission, or possession, that is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.  Section 18-2-101, C.R.S. 2005; *People v. Lehnert*, __ P.3d __ (Colo. App. No. 02CA2186, July 28, 2005).

> A person commits the crime of murder in the first degree if after deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person.  Section 18-3-102, C.R.S. 2005.

> "After deliberation" means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act.  An act committed after deliberation is never one committed in a hasty or impulsive manner.  Section 18-3-101, C.R.S. 2005; *People v. Dist. Court*, 926 P.2d 567 (Colo. 1996).  A person acts "intentionally" when his conscious objective is to cause the specific result proscribed by the statute defining the offense.  Section 18-1-501(5), C.R.S. 2005; *People v. Dist. Court, supra*.

> The element of deliberation, like intent, can rarely be proved other than through circumstantial or indirect evidence.  Such evidence may include the use of a deadly

weapon, the manner in which it was used, and the existence
of hostility between the defendant and the victim.  The fact
finder may infer an intent to cause the natural and probable
consequences of unlawful voluntary acts from the
circumstances surrounding the acts.  *People v. Dist. Court*,
*supra.*

Here, the People presented evidence that defendant
broke into the victim's home and held her hostage in her
bedroom for several hours with a loaded shotgun.
Defendant repeatedly told both the victim and police officers
that he went to the victim's home to kill her.  Defendant also
aimed the gun at the victim's head at pointblank range,
pushed the gun against her face several times so that her
head was pressed against the headboard, put the gun inside
her mouth, and hit her several times with the gun.  The
victim also testified that defendant's finger was on the trigger
the entire time.

Based on this evidence, taken as a whole and in the light
most favorable to the prosecution, we conclude the evidence
was sufficient to support a finding of guilt beyond a
reasonable doubt that defendant attempted to commit first
degree murder.  *See People v. Johnson*, 750 P.2d 72 (Colo.
App. 1987) (defendant's possession of a working rifle and
live ammunition and his statements that he intended to shoot
the victim were sufficient to submit the case to the jury).

Accordingly, we conclude the evidence was sufficient to
sustain the attempted first degree murder conviction.

*Hills*, No. 03CA1312 at 9-12.

The standard for sufficiency of the evidence, which was clearly established when

Mr. Hills was convicted, is set forth in *Jackson v. Virginia,* 443 U.S. 307 (1979).  In

*Jackson,* the Supreme Court held that "the relevant question is whether, after viewing

the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.

"This familiar standard gives full play to the responsibility of the trier of fact fairly to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." *Id.*

This standard reflects the "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Turrentine v. Mullin,* 390 F.3d 1181, 1197 (10th Cir. 2004). My review under this standard is " 'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Messer v. Roberts,* 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Wright v. West,* 505 U.S. 277, 296-97 (1992)).

Sufficiency of the evidence is a mixed question of law and fact. *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006). *Maynard* further states, however, that the inquiry is not simply dealt with under 28 U.S.C. § 2254(d)(1) as *McKune* indicates, but requires applying both subsections (d)(1) and (d)(2) of § 2254 to determine whether the facts are correct and the law was properly applied to the facts. *Id. (*citing *Hamilton v. Mullin,* 436 F.3d 1181, 1194 (10th Cir. 2006); *Hale v. Gibson,* 227 F.3d 1298, 1335 n. 17 (10th Cir. 2000) (noting precedent has investigated sufficiency of the evidence both as a legal question and as a factual question). I also must defer to any determination of factual issue by the state court due to the presumption of correctness afforded by § 2254(e). *Fields v. Gibson,* 277 F.3d 1203, 1221 (10th Cir. 2002).

As identified by the Colorado Court of Appeals, the prosecution presented evidence that (1) Mr. Hills broke into the victim's home and held the victim hostage in her bedroom for several hours with a loaded shotgun; (2) Mr. Hills told both the victim and police officers that he went to the victim's home to kill her; and (3) Mr. Hills aimed

the gun at the victim's head at pointblank range, pushed the gun against her face several times so that her head was pressed against the headboard of the bed, put the gun inside her mouth, and hit her several times with the gun.  The victim also testified that defendant's finger was on the trigger the entire time.

Although Mr. Hills claims that a SWAT team member perjured himself while testifying at the trial, there is no basis for the perjury claim.  I have reviewed the transcript of Mr. Hills' trial.  Contrary to Mr. Hills' allegations, more than one SWAT team member testified at the trial and at the preliminary hearing that Mr. Hills stated during the time he was communicating with the SWAT team negotiator that he came to the victim's home with the intent to kill her.  The SWAT team members who testified at trial included Russ Johnson, Eugene Boespfhug, and A.C. Stutson.  *State of Colo. v. Hills*, No. 02CR1263, Reporter's. Transcript, Vol. # VIII at 130, 151, 200, and 234.  At the preliminary hearing, Mr. Johnson and Mr. Boespfhug also testified that Mr. Hills stated that he had come to the victim's house to kill her.  Vol. # III at 21 and 74.  The only SWAT team member who testified that she did not hear Mr. Hills state that he intended to kill the victim was Kimberly Martinez.  Ms. Martinez testified at the preliminary hearing that, although she listened to Mr. Hills along with Mr. Johnson during the entire negotiation, she acts as a secondary, which includes listening to the negotiations, running interference to make sure no one bothers Mr. Johnson, and sending information back and forth from other SWAT team members to Mr. Johnson.  Vol. # III at 95.  Ms. Martinez also stated that she did not hear all of what Mr. Hills said because she was involved with information that was being given to her.  Vol. # III at 98.  Ms. Martinez was not able to testify at the trial because she was deployed to Iraq.  Nonetheless, her

statement from the preliminary hearing regarding Mr. Hills' statement during the

negotiations was read into the record by Mr. Johnson on redirect examination.  Vol. #

VIII at 223-24.

Furthermore, Mr. Hills' assertion that his estranged wife invited him to her home

is without merit.  Mr. Hills attempts to prove his claim by the use of telephone records

from Qwest, which identify calls made from the victim to Mr. Hills on the day of the

offense in question.  Simply because the victim called Mr. Hills does not indicate that

she invited him to her home.  Furthermore, testimony provided by a representative from

Qwest, during cross-examination by the prosecution, indicated that several of the calls

made from or to the victim were not of the duration that the defense claimed they were

contradicting the defense's theory that these calls were more conversational in nature

than confrontational.  Vol. # IX at 58-64.

Aside from Mr. Hills' attempt at defining first degree murder and felony murder, I

find that under Colo. Rev. Stat. § 18-2-101

> (1) A person commits criminal attempt if, acting with the kind
> of culpability otherwise required for commission of an
> offense, he engages in conduct constituting a substantial
> step toward the commission of the offense.  A substantial
> step is any conduct, whether act, omission, or possession,
> which is strongly corroborative of the firmness of the actor's
> purpose to complete the commission of the offense . . . .

I further find that under Colo. Rev. Stat. § 18-3-102

> (1) A person commits the crime of murder in the first degree
> if:
>
> (a) after deliberation and with the intent to cause the death of
> a person other than himself, he causes the death of that
> person or of another person . . . .

Simply because Mr. Hills did not shoot the gun does not require a finding that he

19

was innocent of attempted first degree murder.  Furthermore, the evidence was

sufficient for the jury to find that he intended to kill the victim.  The findings by the

Colorado Court of Appeals' decision regarding the sufficiency of the evidence was not

contrary to or an unreasonable application of any clearly established rule of federal law

as determined by the U.S. Supreme Court, nor was the decision based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  The sufficiency of the evidence claim lacks merit and is denied.

    D.  Consecutive Sentences/Identical Evidence

Finally, Mr. Hills asserts that under Colo. Rev. Stat. § 18-1-408(3), 2001,

concurrent sentences should have been imposed for the two second degree assault

counts and the attempted first degree murder count because the counts were supported

by the same evidence.  (Oct. 3, 2007, Application at 23-24.)  In support of his claim, Mr.

Hills contends that because he used a weapon in all three counts and there was not a

break in the action that occurred the three incidents were one criminal episode.  (Oct. 3,

2007, Application at 23.)

Respondents argue that Mr. Hills is asserting that the consecutive sentences

violate his right to be free from double jeopardy.  (Answer at 23.)  They contend that the

consecutive sentences properly were authorized by state law and did not constitute

double jeopardy.  (Answer at 23.)  Respondents concede that Colo. Rev. Stat. § 18-1-

408(3) requires concurrent sentence where two offenses are based on identical

evidence.  (Application at 24.)  Nonetheless, Respondents argue that in this case the

two assaults were not based on identical evidence because they were based on two

separate physical acts, including the use of a shotgun barrel to hit the victim on her

head, and the act of throwing the victim down the stairs.  (Application at 24.)

Respondents further argue that the trial court ruled that the attempted first-degree murder conviction (1) required proof of different elements, other than what was required in the second-degree assault counts; (2) was based on Mr. Hills stating that he had gone to the victim's home with the intent to kill her, threatened to kill her, and had pointed the loaded shotgun at her at pointblank range with his finger on the trigger; and (3) was authorized as a consecutive sentence under § 18-1-408(3).  (Answer at 24.)  Respondents conclude that, because § 18-1-408(3) authorized consecutive sentences in this case, no violation of the Double Jeopardy Clause occurred, and no federal habeas review is available.  (Application at 24.)

With respect to the consecutive sentences claim, the Colorado Court of Appeals found as follows:

> When two or more offenses are charged and are supported by identical evidence, the court may require the state to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried,
>
> the sentences imposed shall run concurrently.  Section 18-1-408(3), C.R.S. 2005.
>
> Here, defendant concedes that two assaults occurred, one during which he hit the victim on the head with the shotgun barrel and one during which he threw her down the stairs.  Defendant argues, however, that these assaults occurred during "one continuous attack" and were supported by evidence identical to that supporting the first degree murder conviction.
>
> Although the trial court acknowledged that the incident "was all one criminal episode in the sense that it all occurred on the same day over the space of many hours," it distinguished the "entirely distinct criminal episodes involved" based on separate factual events.

21

The court explained that the attempted first degree murder conviction required proof of different elements from the assaults, namely, deliberation and intent to kill accompanied by a substantial step. *See* §§ 18-2-101, 18-3-102. To prove these elements, the People introduced evidence of defendant's statements that he went to the victim's home to kill her, he threatened to kill her, he pointed a loaded shotgun at her head at pointblank range, and his finger was on the trigger.

Because attempted first degree murder requires proof of separate elements based on additional evidence, § 18-1-408(3) does not require the resulting sentences to run concurrently. *See also People v. Jurado*, 30 P.3d 769 (Colo. App. 2001) (offenses are not necessarily supported by identical evidence even though common elements of proof exist and offenses occurred during one continuous criminal episode).

Moreover, we are not persuaded by defendant's argument that he "engaged in a continuous attack of the victim" because "there was no hiatus" between attacks. *See People v. DeBoer*, 829 P.2d 447, 450 (Colo. App. 1991) (holding the trial court erred in imposing consecutive sentences because no circumstances supported separate charges for the stabbings). Here, a break in time and a change in location exist between assaults that support the separate charges. *See Qureshi v. Dist. Court*, 727 P.2d 45 (Colo. 1986) (separate assault charges not supported by identical evidence when the first stabbings occurred in the kitchen and the second in the bathroom).

Accordingly, we conclude the court did not err by imposing consecutive sentences.

*Hills*, No. 03CA1312 at 12-14.

The constitutional guarantee against double jeopardy consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), overruled on other grounds by

*Alabama v. Smith*, 490 U.S. 794 (1989).  The Double Jeopardy Clause is not violated when multiple, but separate, violations of the same provision are charged in multiple counts.  "[W]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *Missouri v. Hunter,* 459 U.S. 359, 366 (1983).  This protection is limited to ensuring that "the sentencing discretion of courts is confined to the limits established by the legislature" because the legislature is vested with the "substantive power to prescribe crimes and determine punishments." *Ohio v. Johnson,* 467 U.S. 493, 499 (1984).  When criminal conduct constitutes a violation of two statutory provisions, the test to determine whether the punishments are "multiple" in violation of the Double Jeopardy Clause is "essentially one of legislative intent."  Id.

Federal courts in a federal habeas corpus proceeding are bound to accept the Colorado Supreme Court's construction of Colorado statutes.  *See Hunter,* 459 U.S. at 368; *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974).  In determining whether a defendant's conduct constitutes a single criminal offense or separate criminal offenses for double jeopardy purposes, the federal courts defer to the state court's interpretation of the relevant statutory provisions.  *Lucero v. Kerby,* 133 F.3d 1299, 1316 (10th Cir. 1998).  Based on *Jurado* and *Qureshi*, as relied on by the Colorado Court of Appeals, Mr. Hills fails to show a violation of double jeopardy.  Mr. Hills was alleged to have hit the victim on the head with the shotgun barrel and in a separate action throw the victim down the stairs.  Furthermore, in accordance with state statutes, the attempted first degree murder conviction required proof of different elements from the assaults,

23

namely, deliberation and intent to kill accompanied by a substantial step.  Because the

attempted first degree murder requires proof of separate elements based on additional

evidence, § 18-1-408(3) does not require the resulting sentences to run concurrently.

To the extent Mr. Hills complains that the consecutive sentences he received

were improper under Colo. Rev. Stat. § 18-1-408(3), he alleges only a violation of state

law.  A habeas corpus application is limited to the review of a state court conviction in

violation of federal law.  *Coleman v. Thompson,* 501 U.S. 722, 730 (1991).  The findings

by the Colorado Court of Appeals regarding the consecutive sentences, therefore, did

not result in a decision that was contrary to, or involved an unreasonable application of,

clearly established Supreme Court law.  The consecutive sentences claim, therefore,

lacks merit and is denied.

## IV.  CONCLUSION

Accordingly, it is

ORDERED that the Application is DENIED and the action is DISMISSED WITH

PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's

fees.  It is

FURTHER ORDERED that the Clerk of the Court is directed to return to the

Jefferson County Combined Court the state court records, including two volumes of

original court files, eleven volumes of transcripts, and three envelopes including pre-

sentence reports, exhibit lists, juror questionnaires, and transcripts of phone messages.

Dated:  September 3, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge